UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MANUEL ARIAS**,                                               Chapter 7
    Debtor                                           Case No. 09-12792-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**ANTOINETTE RODNEY and GREGORY
NELSON, as Trustees of the ANTHONY
RODNEY INVESTMENT TRUST,**
    Plaintiffs
v.                                                              Adv. P. No. 10-1279
**MANUEL ARIAS,**
    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

**I. INTRODUCTION**

      The parties in the above-captioned adversary proceeding, Antoinette Rodney and Gregory Nelson, Trustees of the Anthony Rodney Investment Trust (the "Plaintiffs") and Manuel Arias (the "Defendant" or the "Debtor"), filed Cross-Motions for Summary Judgment. The Court heard the Cross-Motions on January 10, 2012 and took the matter under advisement. The parties stated that they do not dispute the material facts necessary to decide the Cross-Motions, although the Court notes that the parties misstated and failed

1

to recognize significant material and dispositive facts in the record.[1]

Based upon the record of proceedings, the Court finds that it need not reach the merits of the Cross-Motions because the record compels *sua sponte* reconsideration of the order dated July 19, 2010 granting the Debtor's Motion to Reopen Chapter 7 Proceeding. The Court now makes the following findings of fact and conclusions of law.

## II. FACTS

The Debtor filed a voluntary Chapter 7 case on March 31, 2009. He filed his Schedules and Statement of Financial Affairs on April 27, 2009.[2] The Chapter 7 Trustee filed a Report of No Distribution on May 6, 2009, one day after the date of the section 341(a) meeting of creditors. The Debtor received a discharge on July 7, 2009 and his case was closed on July 17, 2009.

Almost one year later, on June 28, 2010, the Debtor moved to reopen his Chapter 7 case to list the Plaintiffs as creditors on Schedule F-Creditors Holding Unsecured Nonpriority Claims. As grounds for his Motion to Reopen, the Debtor stated:

> In this regard, the debtor observes that said claims are pre-petition in nature and, hence, must be included in his bankruptcy schedules. 11 U.S.C.

---

[1] In their Joint Pretrial Memorandum, the parties agreed that City Group Wireless, LLC, an entity in which the Debtor held a 50% interest, "continued to operate the business in the Premises thorough October, 2009." The Debtor, however, testified at his deposition that City Group Wireless, LLC was dissolved in March of 2008, prior to the commencement of his bankruptcy case.

[2] The Court may take judicial notice of the Debtor's Schedules of Assets and Liabilities and Statement of Financial Affairs. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999), *cert. denied,* 530 U.S. 1230 (2000); In re Hyde, 334 B.R. 506, 508 n.2 (Bankr. D. Mass. 2005).

> §521(a)(1)(B)(i). In addition, the claims of Anthony Rodney Investment Trust and First Data Global Leasing, Inc. regard lease agreements entered into by City Group Wireless, Inc. [sic], a corporation that previously operated a cell phone retail store in Roxbury, Massachusetts in which he had an interest. In that City Group Wireless was a signatory and was liable on these obligations, the debtor did not believe they could be scheduled in his Chapter 7 case at the time of filing, though the debtor now understands that these obligations, for which he believes he is personally liable as well, should have been included in his Chapter 7 schedules when filed.

After the Court granted his Motion to Reopen, the Debtor filed an amended Schedule F, listing the Plaintiffs with a claim for "lease payments, taxes, fees, deposit" in the sum of $8,481.00 [sic].

The Debtor's Schedules and Statement of Affairs are far from models of completeness and clarity. On his petition, the Debtor did not list any trade names for unincorporated businesses. The Debtor listed no real property on Schedule A-Real Property. On Schedule B-Personal Property, he did not disclose any "Stock and interests in incorporated and unincorporated businesses" or "Interests in partnerships or joint ventures," although he did list three checking accounts at Citizens Bank, one in the name of "Amerimobility" with a balance of $1,650.46, and a savings account at Citizens Bank, as well as an $800 contract claim against Al Hassan Bakarr ("Bakarr"). The Debtor specifically did not list any security deposits with landlords, using an "X" to indicate "None" in the appropriate space. He claimed all assets he listed on Schedule B as exempt on Schedule C-Property Claimed as Exempt, including the Amerimobility account and the contract claim against Bakarr. The Debtor did not disclose any executory contracts or leases on Schedule G-Executory Contracts, and he did not disclose any co-debtors on Schedule H-Codebtors.

3

On Schedules I and J-Current Income and Expenses of Individual Debtor(s), the Debtor disclosed receipt of income from a business, although he did not identify the business by name.

The Debtor set forth a limited amount of information about the nature of his business and his business income in his Statement of Financial Affairs. He reported the following "Income from employment or operation of business":

| Year | Amount | Source |
|---|---|---|
| 2007 | $63,586.00 | City Group Wireless Partnership Income |
| 2007 | $22,636.00 | Employment |
| 2008 | $47,883.00 | Amerimobility |

Additionally, in response to the requirement to disclose information about transfers "either absolutely or as security within two years immediately preceding the commencement of the case," the Debtor disclosed the following:

| Name and Address of Transferee, Relationship to Debtor | Date | Describe Property Transferred and Value Received |
|---|---|---|
| Al Hassan h. Bakkar [sic], Sr. 134 Edgemere Road #6 W. Roxbury, MA 02131 | 3/27/08 | Transferred 50% Interest in City Group Wireless, LLC Acquired Codman Square wireless store, including all computers and fixtures + $2,000.00 |

The Debtor referenced City Group Wireless, Inc. in his Motion to Reopen as a corporation that previously operated a cell phone retail store in Roxbury, Massachusetts in which he had an interest. That statement was inaccurate. Prior to the commencement of the Debtor's Chapter 7 case, the parties agreed that the Debtor and Bakarr were

4

members of a limited liability company known as City Group Wireless, LLC ("City Group"), each with a 50% membership interest. City Group operated three retail cellular telephone stores; the Debtor was its manager.

The Plaintiffs, as landlord, and City Group Wireless, LLC, as tenant, entered into a commercial lease on October 26, 2007. The Debtor and Bakarr guaranteed City Group's performance under the terms of the lease. The lease provided in pertinent part the following:

> 11. <u>ASSIGNMENT - SUBLETTING</u>. The LESSEE [City Group Wireless, LLC] shall not assign or sublet the whole or any part of the Premises without the LESSOR'S prior written consent which may be withheld for any reason. LESSEE shall pay all expenses of LESSOR incurred in LESSOR'S review of any such request by LESSEE. Notwithstanding such consent, LESSEE shall remain liable to LESSOR for the payment of all rent and for the performance of the convents and conditions of this Lease (which following assignment shall be joint and several with assignee).
>
> ***
>
> 17A. <u>DEFAULT AND BANKRUPTCY</u>. In the event that:
>
> (a) The LESSEE, or any guarantor of LESSEE'S obligations hereunder, shall default in the payment of any installment or rent or additional rent or other sum herein specified; or
>
> (b) The LESSEE shall default in the observance or performance of the LESSEE'S covenants, agreements, or obligations hereunder (except) [sic] as provided in Paragraph 17A(a) and the LESSEE shall not cure such default within thirty (30) days, then if LESSEE shall not commence to cure the same within thirty (30) days and diligently pursue the curing of the same; or
>
> (c) If LESSOR [sic] or any guarantor of LESSEE'S obligations under this Lease make assignment for the benefit of creditors, commits any act of bankruptcy or files a petition under any bankruptcy or insolvency law; or if such a petition is filed against LESSEE or any guarantor of LESSEE'S obligations

    under this Lease and is not dismissed within sixty (60) days; or if a receiver or similar officer becomes entitled to LESSEE'S leasehold hereunder and it is not returned to LESSEE within sixty (60) days, or if such leasehold is taken on execution or other process of law in any action against LESSEE;

    then in any such case the LESSOR shall have the right thereafter, without any further notice and while such default continues, to re-enter and take possession of the Premises, to declare the term of this Lease ended, and remove the LESSEE'S effects, at LESSEE'S sole cost and expense, without prejudice to any remedies which might otherwise be used for arrears of rent or other default . . . .

City Group was dissolved in March of 2008, approximately four months after executing the lease and prior to the commencement of the Debtor's Chapter 7 case. Accordingly, there was a breach of the covenants and obligations under the lease at the time the Debtor filed his Chapter 7 petition. The Debtor did not notify the Plaintiffs that City Group had been dissolved, and he did not notify them that he had filed a Chapter 7 petition.

On December 10, 2009, approximately five months after the Debtor received a discharge, the Plaintiffs, on the one hand, and the Debtor and Bakarr, on the other hand, executed a Lease Termination Agreement, which required the Debtor and Bakarr to pay $7,124.37 to the Plaintiffs in 24 monthly installments. Both the Debtor and Bakarr were identified as "Tenant" and executed the agreement in their individual capacities. City Group, the original Lessee under lease, was not mentioned by name. In an affidavit filed in conjunction with the Plaintiffs' Motion for Summary Judgment, however, Antoinette Rodney stated that, when she signed the Lease Termination Agreement, it was her intention to terminate the commercial lease between the Trust and City Group. She added

6

that because the Lease Termination Agreement terminated the lease, the Trustees did not attempt to collect future rent or other charges from City Group. She also stated: "Had the Trust been aware of the Defendant's personal bankruptcy filing, that would have influenced the terms (if there were any) on which the Trust would have agreed to the early termination of the Lease."

The Debtor explained the circumstances surrounding the Lease Termination Agreement at his deposition, while admitting that he continued to make payments under the lease because he "had a high expectation for the store to pick back up" and he "wanted to stay in the store." Despite his expectations, however, the business, which he operated as a sole proprietorship, did not generate sufficient revenue to satisfy expenses, and the Debtor no longer wanted to pay rent.

The Debtor testified that when he contacted the Plaintiffs' agent, identified as Mr. Gabeau with Hunneman Management and Development Company, "it was just me." He stated that "at the time Hassan [Bakarr] and I had separated." He further explained that Bakarr had purchased his interest in two of the three stores that City Group had owned and operated and that he "stayed with" the Codman Square location. He testified that he was the sole owner and manager of that store. He further stated that he personally owned the store and did not conduct business there as a limited liability company. Rather, he testified that he utilized the trade name (or d/b/a) "RPS Mobile," which entity is nowhere mentioned in his Schedules or Statement of Financial Affairs. The Debtor testified that he paid rent to the Plaintiffs using bank accounts in the name of "Manuel Arias d/b/a RPS

Mobile." According to the Debtor, City Group was dissolved in March of 2008, and RPS Mobile became the tenant.

The Debtor's testimony unequivocally established that City Group was dissolved before the commencement of his bankruptcy case and that he, without notice to the Plaintiffs, in effect, caused the assignment of the lease to himself. Accordingly, by failing to list the Plaintiffs as creditors on Schedule F at the commencement of his case as the holders of claims against him for breach of the terms of the lease and/or as the holders of a contingent, unliquidated claim against him as guarantor of City Group's obligations under the lease, he concealed vital information from the Plaintiffs that affected their negotiating position with respect to the Lease Termination Agreement. Additionally, by failing to list the trade name of, and interest in, RPS Mobile on his petition and on Schedule B, or for that matter even mention RPS Mobile, coupled with the omission of any reference to a security deposit on Schedule B and the lease with the Plaintiffs on Schedule G, the Debtor withheld vital information from the Chapter 7 Trustee.

### III. POSITIONS OF THE PARTIES

A. The Plaintiffs

The Plaintiffs maintain that the obligation arising out of the Lease Termination Agreement is a post-petition debt not affected by the Debtor's discharge. They rely upon section 727(b) of the Bankruptcy Code, which in pertinent part provides: "(b) Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under

this chapter . . . ." 11 U.S.C. § 727(b).  The Plaintiffs argue that because the Lease Termination Agreement was executed postpetition and because the consideration for the agreement was not, in whole or in part, based on a debt that is dischargeable, the debt is not subject to discharge. They point out that the rental obligations that were not paid were from March 31, 2009 to December 15, 2009.  They add that the Lease Termination Agreement is not subject to the requirements for a valid reaffirmation agreement under 11 U.S.C. § 524(c) because the Plaintiffs offered entirely new and independent consideration to the Defendant in the form of their agreement to terminate the lease with City Group early.

    B. <u>The Debtor</u>

The Debtor argues that his personal guaranty was an obligation that he incurred prepetition, well before he filed for bankruptcy protection. In this regard, the Defendant observes that a guarantee is considered "a classic illustration of a contingent claim" as defined by bankruptcy law.  *See*  11 U.S.C. § 101(5). He adds:

> [T]he fact that the Defendant's obligation under the guarantee was triggered by City Group's failure to pay rent and other expenses that fell due after the filing of his petition does not transform the Plaintffs' interest into a post-petition claim, as said claim remains pre-petition in nature in light of the indisputable fact that the Defendant executed the guarantee well before the petition date. Moreover, in that the Defendant received his bankruptcy discharge on July 7, 2009, and he thereafter duly amended his schedules to include the Plaintiffs' claim, the Plaintiffs' claim has been effectively discharged as well under the Bankruptcy Code.

The Debtor also argues that the Lease Termination Agreement failed to satisfy the requirements of § 524(c) and is therefore void because the consideration for the Lease

Termination Agreement, namely payment of $7,124.37 in rental obligations owed by City Group under the lease, was based entirely upon the lease previously entered into between the Plaintiffs and City Group as well as the Defendant's personal guarantee of the lease.

**IV. DISCUSSION**

    A. <u>Applicable Law</u>

Section 350(b) of the Bankruptcy Code provides that "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). The Debtor moved to reopen his bankruptcy case on the ground that he unintentionally failed to list prepetition creditors, including the Plaintiffs. According to the court in <u>In re Barrett</u>, 471 B.R. 471 (Bankr. N.D. Ohio 2009),

> For a Chapter 7 debtor, a bankruptcy discharge is limited in two important respects: (1) only those debts which arose before the commencement of a debtor's case are subject to discharge; and (2) the debt to be discharged must not otherwise be excepted from discharge under any of the conditions set forth in § 523 of the Code. <u>In re Sieger</u>, 360 B.R. 653, 657 (Bankr. N.D. Ohio 2007).

<u>Id.</u> at 475 (footnote omitted). The court in <u>Barrett</u> added: "The general rule is subject to some very limited exceptions. For example, damages arising from the postpetition rejection of a lease are treated as arising immediately prepetition, and thus subject to a court's order of discharge entered under § 727. 11 U.S.C. §§ 365(g)(1); 502(g)." <u>Id.</u> at 475 n.1 (citing <u>Miller v. Chateau Communities, Inc. (In re Miller)</u>, 282 F.3d 874, 878 (6th Cir. 2002)).

In addition to the principles set forth above, the United States Court of Appeals for the First Circuit in <u>Colonial Surety Co. v. Weizman</u>, 564 F.3d 526 (1st Cir. 2009), clarified

the circumstances when a motion to reopen should be allowed. It addressed facts and arguments similar to the those present in the instant case. According to the First Circuit, the district court ruled

> that the discharge did not include Colonial's claims against Weizman because they had not arisen at the time of the bankruptcy [filed by Weizman]: in a nut shell, that an April 2006 discharge could not wipe out Colonial's claims, which arose only with the September 2006 project defaults by Uni-Con. But the Colonial claims rest upon the indemnification agreement that itself was made before the bankruptcy filing and it is his obligation under the agreement that Weizman says was discharged.

564 F.3d at 529. The First Circuit held that in cases where Chapter 7 trustees file reports of no distribution, Chapter 7 debtors can request the bankruptcy court to reopen the case to belatedly list a creditor who was innocently omitted and who would have received no benefit from notice of the original case. Id. at 532. The First Circuit relied upon 11 U.S.C. § 523(a)(3)(A), which precludes discharge of an unlisted debt when the creditor did not receive notice or have actual knowledge of the filing of the bankruptcy case. The First Circuit adopted the rationale of the Seventh Circuit in Stark v. St. Mary's Hosp. (In re Stark), 717 F.2d 322 (7th Cir. 1983), see Weizman, 564 F.3d at 532, and rejected the decision of the Ninth Circuit in Beezley v. California Land Title Co. (In re Beezley), 994 F.2d 1433 (9th Cir.1993), in which the court stated that dischargeability is unaffected by the amendment of schedules in a no-asset case where a bar date has not been established, because reopening such a case to schedule a debt would serve to purpose. Weizman, 564 F.3d at 531. The First Circuit emphasized that § 523(a)(3)(A) "aims to assure creditor notice before discharge," because "no-asset claims are easy to make; a creditor might want notice

11

precisely to argue that there are assets even though the debtor asserts otherwise." Id. at 531, 532.

Thus, in Weizman, the First Circuit placed the burden on the debtor to demonstrate cause to reopen by showing "that the law and equities justify [the] relief—absent which the debt will remain undischarged." Id. at 532. The First Circuit concluded that "a debtor who moves to reopen to list a debt long after discharge surely must show that the omission was innocent, and, even so, can probably be countered by *anything that makes it inequitable to grant such relief.*" Id. [3] In  In other words, according to the court in In re Corbett, 425 B.R. 51 (Bankr. D. N.H. 2010), "debtors seeking to reopen to list a debt must show: (1) the omission was innocent, and (2) the equities justify reopening," adding that "[i]f it was not clear before, it is now[,] Debtors cannot simply recite a generic explanation that the omission was innocent without some further factual detail. Id. at 53.[4]

---

[3] The First Circuit observed that Weizman was free to seek the reopening of his bankruptcy case to list Colonial Surety and in fact did so but withdrew the request, "possibly not caring to face the charge (endorsed by the district judge) of fraudulent concealment of assets in the original bankruptcy." 564 F.3d at 532.

[4] The court in Corbett concluded:

In light of Weizman, future motions in this district to reopen no-asset chapter 7 cases to add creditors will be governed by a slightly different procedure. In the first instance, debtors filing motions to reopen must submit either a verified motion or include an affidavit signed by the debtor providing facts sufficient for the Court to find that the debtor has met the burden of showing that: (1) the omission was innocent, and (2) the equities justify reopening the case to list the omitted creditor or creditors. If established, the Court will then issue an order, largely consistent with "

B. Analysis

Based upon the record of proceedings in this case, the Court is incapable of concluding that the Debtor's omission of the Plaintiffs from Schedule F was innocent, particularly where, with knowledge that City Group was dissolved, he failed to list his d/b/a and the security deposit held by the Plaintiffs. But even if his omissions were innocent, the Court finds that the equities of this case compel the entry of an order vacating the Motion to Reopen. The Debtor's deposition testimony coupled with his inaccurate and misleading Schedules and Statement of Financial Affairs, unequivocally establish that it was inequitable to reopen the case, an inequity reinforced by the Debtor's egregious argument that the Plaintiffs' claim under the Lease Termination Agreement is an unenforceable reaffirmation agreement, when they had no knowledge that the Debtor had filed a bankruptcy petition and received a discharge, and, thus, could not possibly have complied with the provisions of 11 U.S.C. § 524(c). Moreover, the affidavit of Antoinette Rodney establishes that the Debtor failed to disclose to the Plaintiffs on December 10, 2010 that City Group had been dissolved.

In view of the Court's decision to reconsider its order reopening the Debtor's case, the Court need not reach the merits of the Cross-Motions. The Court observes, however, that had the Debtor disclosed the dissolution of City Group or had the Plaintiffs become

---

Walker orders," that provide the omitted creditor with notice and an opportunity to object.

Corbett, 425 B.R. at 53.

13

aware of that dissolution, in all likelihood the lease would have been terminated and the Debtor would have occupied the leased premises as a tenant at sufferance. Accordingly, his agreement to pay $7,124.37 either as the successor/assignee of City Group or as guarantor can be viewed as a new, postpetition obligation, not subject to discharge.

**V. CONCLUSION**

In view of the foregoing, the Court shall enter an order vacating its order of July 19, 2010. Accordingly, the debt to the Plaintiffs is not discharged. The Cross-Motions for Summary Judgment are moot.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: March 16, 2012